IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

VERRINA SHIELDS,

    Plaintiff,

vs.                                                No. 13-2955-STA-dkv

HSBC BANK USA, NATIONAL ASSOCIATION;
STUART GULLIVER, C.E.O;
BANK OF AMERICA;
BRIAN MOYNIHAN, C.E.O.;
RUBIN LUBLIN, LLC;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; and
BILL BECKMAN, C.E.O.

    Defendants.

---

REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS

---

On December 10, 2013, the plaintiff, Verrina Shields, a resident of Shelby County, Tennessee, proceeding *pro se,* filed a complaint entitled "RICO COMPLAINT", (D.E. 1), and paid the case initiation fee. Summonses were issued for all the defendants named in the caption of the complaint.[1]

Now before the court are the following motions: (1) the December 18, 2013 motion of the defendant Rubin Lublin TN, PLLC[2] to dismiss the complaint pursuant to Rule 12(b)(6) of the

---

[1] The summons issued for Stuart Gulliver was returned unexecuted. (D.E. 11.)
[2] Rubin Lublin TN, PLLC is incorrectly named in the Complaint as Rubin Lublin, LLC.

Federal Rules of Civil Procedure for failure to state a claim (Lublin Mot. to Dismiss, D.E. 6), and (2) the January 6, 2014 motion of the defendants HSBC Bank USA[3] ("HSBC Bank Trustee"), Bank of America, and Mortgage Electronic Registration System, Inc. ("MERS").[4]

This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.) Shields has not responded to the motions to dismiss, and the time for response has expired. For the reasons that follow, it is recommended that the defendants' motions be granted.

I. PROPOSED FINDINGS OF FACT

This is an action brought as a civil RICO claim pursuant to 18 U.S.C. §§ 1961-1968 to prohibit a foreclosure sale of real property located at 3205 Pershing, Memphis, Tennessee 38112

---

[3] The correct name is HSBC Bank USA National Association as Trustee for the Holders of the Deutsche Bank Alt-A Securities, Inc. Mortgage Loan Trust Series 2005-2 Mortgage Pass-Through Certificates, Series 2005-2.

[4] Also named as defendants in the caption of the complaint are Stuart Gulliver, C.E.O. of HSBC Bank USA National Association; Brian Moynihan, C.E.O. of Bank of America; and Bill Beckman, C.E.O. of MERS. All the factual allegations, however, in the complaint pertain to the named corporate entities, not the named individuals. Therefore, the court will treat the complaint against Gulliver, Moynihan, and Beckman as claims against them in their official capacities only.

("the Property"), which was scheduled for December 12, 2013. (Compl., D.E. 1.) In the complaint, Shields alleges that "the defendants did not loan [her] any money," (*Id.* ¶ 3); that she had no contract with the defendants, (*Id.*); that she was deceived by the defendants into believing that she had a mortgage with them, (*Id.* ¶ 4); that an "insurance" claim had been filed and satisfied any alleged mortgage debt on the property, (*Id.*); that she paid her mortgage in full through the E.F.T. process, (*Id.* ¶ 5); and that the defendants through a pattern of racketeering activity conspired to illegally foreclose on the Property, (*Id.* ¶ 6), and in so doing, committed wire fraud, mail fraud, insurance fraud, and mortgage fraud, (*Id.* ¶¶ 9, 12). Shields also purportedly alleges state law claims of outrageous conduct, defamation, and undue enrichment. (*Id.* ¶¶ 10, 14, 16.)

In her prayer for relief, Shields seeks injunctive relief enjoining the defendants "from attempting to collect on an alleged debt that does not exist" and from "foreclosure and/or foreclosure attempts," declaratory relief that Shields owns the Property "free and clear," compensatory damages in the amount of $300,000, and punitive damages in the amount of $1,000,000. (*Id.* at 4-5.)

According to the public records of the Shelby County Register,[5] Shields obtained a $43,500 loan from Flick Mortgage Investors, Inc. on November 24, 2004, repayment of which was secured by a deed of trust in which Shields conveyed the Property to Richard T. Hayes as Trustee for MERS (the "Deed of Trust"). The Deed of Trust dated November 24, 2004, was signed by Shields and recorded on December 2, 2004, as Instrument No. 04200329, in the Register's Office of Shelby County Tennessee and re-recorded December 11, 2006 as Instrument No. 06200091. (Def. Lubin's Mem. in Supp. of Mot. to Dismiss, D.E. 7, Ex. A.) On April 18, 2012, MERS assigned the Deed of Trust, together with the note, to HSBC Bank Trustee (the "Assignment"). The Assignment was recorded as Instrument No. 12045118. (*Id.* at Ex. B.) The Deed of Trust, Instrument No. 04200329, in paragraph 24 titled "Substitute Trustee," states that "[l]ender, at its option, may from time to time remove Trustee and appoint successor trustee." (*Id.* at Ex. A.) Pursuant to the Deed of Trust, on June 7, 2013, HSBC Bank Trustee appointed Rubin Lubin

---

[5] The court can consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)(internal quotation marks omitted).

as substitute Trustee. The Appointment of Substitution of Trustee document is recorded in the Shelby County Register as Instrument No. 13075556. (*Id*. at Ex. C.)

II. PROPOSED CONCLUSIONS OF LAW

A. <u>Standard of Review for Failure to State a Claim</u>

In assessing whether Shields states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court considers the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Willams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the

5

requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Rule 8 of the Federal Rules of Civil Procedure requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)(internal quotation marks omitted). Further, "it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." *Id.*

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks

omitted); *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B. <u>Claim Under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*.</u>

Shields styles her lawsuit as a "RICO Complaint", pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. Although Shields does not identify the provisions of RICO that the defendants allegedly violated, the court assumes that she is proceeding under Section 1964(c), RICO's provision authorizing civil suits for a

7

violation of 18 U.S.C. § 1962. It provides, in pertinent part, that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . .

18 U.S.C. § 1964(c).

To establish a violation of section 1962,[6] a plaintiff must show: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). RICO defines racketeering activity to include any act that is indictable under certain provisions of Title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341.

---

[6]  18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

8

The complaint contains no factual allegations that support the elements of a civil RICO cause of action. There are no legal or factual allegations of an enterprise or of a pattern of racketeering activity. Although Shields alleges in a conclusory fashion that the defendants committed two or more predicate offenses consisting of either wire fraud, mail fraud, insurance fraud, and/or mortgage fraud, she pleads no facts that would support a claim for any of these underlying offenses. Nor does the complaint contain any factual allegations of any damages suffered by Shields as a result of a pattern of racketeering activity.

1. *Underlying Predicate Offenses*

A civil RICO claim based on allegations of fraud must also comply with the particularity pleading requirement of Rule 9 of the Federal Rules of Civil Procedure. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006). Rule 9 requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9. "The Plaintiff[] must plead more than a generalized grievance against a collective group of Defendants in order to meet the

9

requirements of FRCP 9(b)." *Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007)(citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)(quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum, . . . allege the time, place and contents of the misrepresentations." *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 72-73, 101 (3d ed. 2004).

In her complaint, Shields fails to identify any false statement allegedly made by any defendant, and much less the

10

time and date of any false representation. She fails to identify the date and subject of any transmission by mail or wire that was allegedly fraudulent or that constituted mortgage or insurance fraud. Indeed, the public property records on file with the Register of Deeds of Shelby County confirm that Shields received a loan from the defendants secured by a deed of trust on the Property. Without any more elaboration, Shields alleges that she paid the debt in an unbelievable manner, that is, by EFT transfer or the payment of insurance proceeds. Accordingly, Shields fails to plead two or more predicate offenses based on fraud with the particularity required by Rule 9. She therefore has failed to plead facts which would form the basis of the first element of a RICO cause of action.

2. *Existence of an Enterprise*

In addition, Shields does not even plead the existence of an enterprise between the defendants, the second element of a RICO cause of action. An "enterprise" can be proven by showing (1) that a group of persons formed an ongoing organization; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012). The complaint contains no factual allegations from which the court can

11

conclude that the defendants formed any type of association which functioned as a continuing unit. In addition, "to establish a valid enterprise, each party to the enterprise must be distinct from the other. Thus a person acting as an agent cannot be distinct from its principal for RICO purposes." *Bocciolone v. Solwsky*, No. 08-20200-CIV, 2009 WL 936667, at *4 (S.D. Fla. Apr. 6, 2009). Rubin Lublin's role was simply that of a substitute trustee, an agent for HSBC Bank Trustee, and therefore he cannot be considered a separate party to any enterprise.

    3.   *Damages Resulting from a Pattern of Racketeering Activity*

Shields has failed to allege any injury suffered by her because of the defendants' alleged RICO violation. In her complaint, she claims that the defendants attempted "to illegally foreclose on said property," "to foreclose on a mortgage that does not exist," and "to collect on an alleged debt that does not exist." (Compl. D.E. 1 ¶¶ 6-8.) However, no foreclosure took place. Indeed, according to the property records of the Register of Deeds, Shields no longer owns the Property, having transferred the Property to the C.C. Foley Family Land Trust by Quit Claim deed, dated January 7, 2014, recorded as Instrument No. 14002853

12

in the Register's Office of Shelby County.[7] Nor is there any allegation that Shields resides at the property or ever resided there.

Accordingly, the complaint fails to state a RICO claim.

C. <u>Claim Under the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.*</u>

Shields' one reference in the complaint to an "EFT" transfer is insufficient to state a claim for violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*

The Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), was enacted as part of the comprehensive Consumer Credit Protection Act ("CCPA"), 15 U.S.C. §§ 1601-1693r, and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008)(citing 15 U.S.C. § 1693(b)). Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)).

Under the EFTA, the term "electronic fund transfer" means

---

[7] The court questions whether Shields is the proper party to maintain this lawsuit.

> any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.

Here, Shields merely states that "she paid her mortgage in full through the E.F.T. process." (Compl., D.E. 1 ¶ 5.) Other than this one conclusory statement, Shields includes no other factual allegations about her purported "EFT" payment. She does not state the amount, the date, to whom it was sent, or the means or method of transfer. Accordingly, the complaint fails to state a claim under the EFTA.

D. <u>Claim for Predatory Lending</u>

Shields makes two references in her complaint that could imply she is purporting to assert a claim for "predatory lending." First, she alleges that this court has federal-question jurisdiction over this case pursuant to the "Predatory Lending Act" without citing the actual statute to which she is referring.

(Compl., D.E. 1 ¶ 1.) She also states that the defendants "over collateralized [an] alleged loan." (*Id*. at ¶ 13.) To the extent Shields is attempting to assert a claim under Tennessee Home Loan Protection Act, Tenn. Code Ann. § 45-20-101 *et seq.*, the complaint fails to state a claim because that statute applies only to "high-cost home loans" applied for and closed after January 1, 2007, *see Tenn*. Code Ann. § 45-20-111, and Shields obtained the loan giving rise to this lawsuit on November 24, 2004.

To the extent Shields is attempting to assert a claim under the Home Ownership and Equity Protection Act ("HOEPA") amendments to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the complaint likewise fails to state a claim because it is time-barred. The statute of limitations on Truth in Lending Act claims is three years. 15 U.S.C. § 1640(e). Here, Shields executed the note and Deed of Trust at issue on November 24, 2004. She did not file this lawsuit until nine years later on December 10, 2013. Thus, the statute of limitations has run, and any claim under HOEPA is time barred.

E. <u>The Remaining State-Law Claims</u>

Shields purports to assert claims under state law for state law claims of outrageous conduct, defamation, and undue enrichment. (Compl., D.E. 1 ¶¶ 10, 14, 16.)

    1. *Jurisdiction over Remaining State-Law Claims*

15

In her complaint, Shields asserts that this court has subject matter jurisdiction of this case under 28 U.S.C. § 1331[8] because this case involves claims under federal statutes. (Compl., D.E. 1 ¶ 1.) As discussed above, the court has determined that every federal claim asserted by the plaintiff should be dismissed for failure to state a claim. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state law claims by Shields. *See* 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any remaining state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

    2. *Dismissal of Remaining State-Law Claims for Failure to State a Claim Pursuant to Rule 12(b)(6)*

Shields' state-law claims of outrageous conduct, defamation, and undue enrichment should also be dismissed for failure to state a claim because Shields has pleaded no plausible facts to support any of the alleged state law claims.

---

[8] Shields misstates in her complaint that jurisdiction is proper under 18 U.S.C. § 1331. The court will assume for purposes of this report and recommendation that Shields refers to 28 U.S.C. § 1331.

The Supreme Court of Tennessee has recognized three essential elements to a cause of action for outrageous conduct: "(a) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that is it not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The complaint is completely devoid of any factual allegations supporting these three essential elements of a claim of outrageous conduct.

To establish a claim for defamation under Tennessee law, a plaintiff must prove that "(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005)(citing *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)). Shields does not identify any false statement published by the defendants which would support a claim for defamation.

Under Tennessee law, a claim for unjust enrichment[9] is based on the doctrine of quantum meruit. "Quantum meruit actions are

---

[9] Shields uses the term "undue enrichment," which the court interprets to be "unjust enrichment."

equitable substitutes for contract claims." *Browns Installation, LLC v. Watermark Solid Surface, Inc.*, No. M2012-02264-COA-R30CV, 2013 WL 5760636, at *3 (Tenn. Ct. App. Oct. 21, 2013)(quoting *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)). To recover for unjust enrichment, the plaintiff must establish five essential elements:

> (1) There is no existing, enforceable contract between the parties covering the same subject matter;
> (2) The party seeking recovery provided goods or services;
> (3) The party to be charged received the goods and services;
> (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the party providing the goods or services expected to be compensated; and
> (5) The circumstances indicate that it would be unjust under the circumstances for a party to retain the goods or services without payment.

*Id.* Shields has alleged no facts which would warrant the application of the doctrine of quantum meruit. Moreover, there is a written contract between the parties covering the same subject matter, that is, the note and Deed of Trust, which would preclude recovery under a theory of unjust enrichment. Thus, Shields fails to state a claim for unjust enrichment.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the motions of the defendants be granted and that Shields's complaint be

dismissed in its entirety as to all the defendants for failure to state a claim upon which relief can be granted.

Respectfully submitted this 7th day of March, 2014.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. F<small>ED</small>. R. C<small>IV</small>. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.